IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHAWN NELSON | ) | CASE NO. 1:04 CV 2303 |
| | ) | |
| Petitioner, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| MARGARET BRADSHAW, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I. Introduction

Before the Magistrate Judge by referral[1] is the pro se petition of Shawn Nelson for a

writ of habeas corpus.[2] Nelson is now incarcerated in the Mansfield Correctional Institution

serving a term of 12 years.[3] The sentence was imposed at a re-sentencing hearing[4] after he

was found guilty at a mixed bench/jury trial in Cuyahoga County Common Pleas Court of

aggravated robbery with specifications and having a weapon while under disability.[5]

---

[1] ECF # 6.

[2] ECF # 1.

[3] *Id.* at 2.

[4] Nelson was re-sentenced after a state appellate court reversed his conviction on the charge of possession of dangerous ordnance. *See*, *State v. Nelson*, No. 83553, 2004 WL 1232155 (Ohio App. 8th Dist. June 3, 2004) (*Nelson* II) affirming imposition of sentence after remand.

[5] *Id.*

Nelson now asserts seven grounds for relief: (1) that the trial court should have suppressed witness testimony resulting from an unduly suggestive photo array; (2) that his prior criminal history was impermissibly put before the jury; (3) that his right to confront and cross examine witnesses was violated by the admission of police testimony concerning out of court identification procedures conducted with witnesses who did not appear at trial; (4) that improper comments by the trial judge to the jury violated his right to a fair trial; (5) that the trial court lacked jurisdiction to hear the case since the indictment was dismissed prior to trial; (6) the indictment was insufficient to state the necessary elements of the crime charged; and (7) that due process was violated when he received a sentence greater than that allowed by law as result of facts found by the court and not by the jury.[6]

The state in response contends that Nelson waived or procedurally defaulted his right to raise in a habeas petition the issue of improper remarks by the trial court because he did not contemporaneously object to those remarks at trial.[7]  Further, it maintains that Nelson is factually incorrect in asserting that his indictment was dismissed prior to trial[8] and states a ground on which federal habeas relief cannot be granted by contending that the indictment was insufficient as a matter of Ohio law.[9]  Finally, it argues that the state appeals court

---

[6] *Id.* at 6-6A.

[7] ECF # 9 at 14-15.

[8] *Id.* at 22-23.

[9] *Id.* at 23-25.

-2-

reasonably applied or did not act contrary to clearly established federal law in denying Nelson's remaining claims.[10]

Nelson filed a traverse in which he contests the position advanced by the state as to each claim for relief.[11]

Upon review, the Magistrate Judge recommends that the petition be dismissed in part and denied in part as more fully explained below.

## II.  Facts

### A.    Trial and sentencing

On direct appeal immediately after trial, the state appellate court made the following findings:[12]

> Police arrested [Nelson] in connection with the robbery of a store owner in Cleveland on August 30, 2001.  On that date, the victim went to the bank at 11:00 in the morning to withdraw $10,000 and drove back to his store at 11:15 a.m.  The bank placed the money in a brown bag.

> In the store parking lot, the victim noticed a red car parked about 35 feet away.  The victim saw the male passenger walk toward the door and then him. The man "flip[ped] out the gun" and pointed it at the victim and said "G*** give me the bag." The victim handed the assailant the bag and kept looking at him.

---

[10] *Id.* at 15-21, 25-28.

[11] ECF # 13.

[12] Findings of fact by the state appeals court on its review of the trial record are presumptively correct in a federal habeas proceeding.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

The victim testified that he tried to focus and look at the assailant's face.  The victim recalled that his assailant wore a blue work uniform.  The assailant left in the red automobile with a driver.  The victim called 911 on his cellular phone and described the assailant as an African American who fled in a red Oldsmobile with temporary tags and gave the direction the vehicle left.

Police arrived at the store three to five minutes later and the victim again described the assailant, including his height and weight.  The victim filed a police report the next day.

Later in the day, on August 30, 2001, police asked the victim to identify a possible suspect in person.  Although the victim recognized the vehicle as the one involved in the incident, he indicated that the suspect was not his assailant.

On or around September 15, 2001, an officer brought photographs to the victim at his store for identification.  The defendant's picture had a different background than the rest of the photographs in the array; however, the victim testified that this had no impact on his identification of defendant as the perpetrator.

The victim identified defendant as his assailant from the photo array.  The victim testified that he picked the defendant from the photo array because he "can't forget his face.  He [was] the one [that] point[ed] the gun at [him]."  (Tr. 58).  The detective did not make any suggestions to him when he looked at the photo array.  The victim testified that he is "very sure" and certain that the defendant was his assailant.  The victim confirmed that prior to and throughout the incident he had several opportunities to observe the assailant.

The officer explained her procedure in conducting the photographic display as follows: "I explain that I am going to show them a photo spread of six individuals, all similar in characteristics, at which point I put the photo spread down at his counter and I said can you identify any of these males *** that took part the day you were robbed."  (Tr. 73).  The officer confirmed that the victim readily identified the defendant as the perpetrator.

The defendant moved to suppress the identification process on the basis that defendant's photo had a different background than the other photos in the array.  After conducting an evidentiary hearing, the court denied the motion.  The defendant waived his right to a jury trial on the count of having a weapon while under disability.  The court then bifurcated that count and the remaining counts proceeded to trial before a jury.

The jury convicted the defendant of aggravated robbery with firearm specifications and possession of dangerous ordnance. Thereafter, the court found defendant guilty of having a weapon while under disability.[13]

As noted, the state appeals court reversed Nelson's conviction for possession of dangerous ordnance, affirmed his convictions on the remaining charges, and remanded the matter for re-sentencing.[14] On remand, Nelson was sentenced to a total term of 12 years.[15] Following an appeal of the sentence, the appellate court affirmed it.[16]

## B.    Direct appeal

Subsequent to the trial and initial sentencing, Nelson, represented by new counsel,[17] filed a timely appeal asserting the following nine assignments of error:

1.    Defendant was denied due process of law when the court overruled defendant's motion to suppress the identification process based on an erroneous burden of proof.

2.    Defendant was denied a fair trial when evidence concerning defendant's alleged criminal history was put before the jury.

3.    Defendant was denied a fair trial when evidence concerning the investigation by police was offered.

---

[13] *State v. Nelson*, No. 81558, 2003 WL 21419298, at *1 (Ohio App. 8th Dist. June 19, 2003) (*Nelson* I).

[14] *Id.*, at *8.

[15] 2004 WL 1232155 (*Nelson* II), at *1.

[16] *Id.*

[17] David Doughten was trial counsel, and Paul Mancino represented Nelson on direct appeal. *See*, ECF # 1 at 7.

-5-

4.      Defendant was denied due process when the court cited facts to the jury in such a manner that it wanted the jury to believe the facts, as recited in the opening statement, showed the defendant was guilty.

5.      Defendant was denied due process of law when he was sentenced for a felony of the third degree for having a weapon while under disability.

6.      Defendant was denied due process of law when the court usurped a jury function by assuming the existence of various elements of the offenses.

7.      Defendant was denied due process of law when he was convicted and sentenced for possession of dangerous ordnance.

8.      Defendant was denied due process of law when the court did not fully inform the jury of all the elements of aggravated robbery.

9.      Defendant was denied effective assistance of counsel.[18]

The state filed a brief in response.[19] Upon review, the state appellate court reversed Nelson's conviction on the charge of possessing dangerous ordnance, rejected all other assignments of error, and affirmed his conviction on all other counts.[20] The court also remanded the case for re-sentencing given the reversal on the conviction for possessing dangerous ordnance.[21]

Nelson, now proceeding pro se, thereupon appealed to the Ohio Supreme Court, asserting the following nine propositions of law:

---

[18] ECF # 11 (state court record) at 0007.

[19] *Id.* at 0048.

[20] 2003 WL 21419298 (*Nelson* I).

[21] *Id.*, at *8.

1.      A defendant is entitled to due process of law when the court denies a motion to suppress identification testimony based on an erroneous burden of proof.

2.      A defendant is denied a fair trial when the evidence concerning the alleged criminal history of defendant is placed before the jury.

3.      A defendant is denied a fair trial when evidence concerning the police investigation is offered as a (sic) substantive evidence of guilt.

4.      A defendant is denied due process of law when the court, in empanelling the jury, referenced facts in such a manner as to state that defendant was guilty based on those assumed facts.

5.      A defendant is denied due process of law when he is sentenced for a felony of the third degree for having a weapon while under disability when the indictment only alleges a felony of the fifth degree.

6.      A defendant is denied due process of law when the court usurps a jury function by assuming the existence of various elements of the offenses.

7.      A defendant is denied due process of law when the court does not fully inform the jury of all of the elements of aggravated robbery.

8.      A defendant is denied effective assistance of counsel through errors and omissions [by which] the defendant has been prejudiced.

9.      A defendant is denied due process of law when he is sentenced to a nine year term of imprisonment for the aggravated robbery.[22]

The state responded,[23] and the Ohio Supreme Court then denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[24]

---

[22] ECF # 11 at 0106.

[23] *Id.* at 0145

[24] *Id*. at 0162.

Nelson did not file for a writ of certiorari after this decision.[25]

## C.    Appeal from re-sentencing

As noted, Nelson was re-sentenced following the remand from the court of appeals after the direct appeal that reversed his conviction on the charge of possessing dangerous ordnance while affirming conviction on all other counts.   Subsequent to re-sentencing, Nelson, represented by the same counsel as had represented him on the original direct appeal,[26] appealed from the re-sentencing, raising the following three assignments of error:

1.    Defendant was denied due process of law when defendant was sentenced to nine years for the aggravated robbery conviction.

2.    Defendant was denied due process of law when the court imposed more than the minimum sentence after stating that defendant had never been to prison before.

3.    A defendant is denied due process of law and subjected to multiple punishments prohibited by the fifth amendment where he is sentenced separately for possession and use of a firearm.[27]

The state responded in opposition,[28] and, upon review, the Ohio Supreme Court denied leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[29]

---

[25] *See*, ECF # 1 at 3.

[26] Paul Mancino represented Nelson on both occasions.  *See*, 2003 WL 21419298 (*Nelson* I) and 2004 WL 1232155 (*Nelson* II).

[27] ECF # 11 at 0206.

[28] *Id.* at 0229.

[29] *Id*. at 0239.

**D.     Mandamus petition**

While the motion for leave to appeal from the re-sentencing was pending before the

Ohio Supreme Court, Nelson, pro se, filed a mandamus petition in the state court of appeals

against the trial judge, presenting the following two issues:

> 1.     Whether the *nolle prosequi* entered on the indictment in a criminal case
>         deprived the trial court of subject matter jurisdiction absent the proper
>         re-institution of charges.
>
> 2.     Whether mandamus and/or prohibition is appropriate remedy.[30]

The trial judge moved to dismiss,[31] and Nelson responded in opposition.[32]  The state

appeals court then granted the motion of the trial judge and dismissed Nelson's petition for

a writ of mandamus.[33]

Nelson thereupon appealed to the Ohio Supreme Court, raising the following six

propositions of law:

> 1.     In a criminal action, a complaint or direct indictment is required to
>         initiate the formal accusatory process, and in the absence thereof, a
>         court has no cause of action before it.
>
> 2.     The absence of a criminal complaint or indictment deprives a court of
>         subject matter jurisdiction to take any action or render any judgment in
>         a case, because there is no case before the court, and any action so
>         taken is void *ab initio* for lack of subject matter jurisdiction.

---

[30] *Id*. at 0245.

[31] *Id.* at 0268.

[32] *Id*. at 0273.

[33] *Id.* at 0278.

3.    Where the indictment in Case No. CR416032 was *nolled*, and no charges were reinstituted, either through a fresh indictment, or a new complaint, no case existed, and the subsequent proceedings were conducted by the trial court in the absence of subject matter jurisdiction, rendering any resultant judgment void *ab initio*.

4.    A person who is incarcerated solely pursuant to a judgment and sentence which is void has a clear legal right to have such judgment vacated, and the tribunal which issued such an invalid judgment and sentence has a clear legal duty to vacate the void judgment.

5.    Where there is a patent and unambiguous lack of subject matter jurisdiction on the part of an inferior court, the writ of mandamus or prohibition will lie, regardless of the availability of an appeal.

6.    Appellant is entitled to the issuance of a writ of mandamus or a writ of prohibition where the appellee patently and unambiguously lacked subject matter jurisdiction to conduct any proceedings in the absence of an indictment or other valid charging instrument.

Again, the state trial judge responded in opposition[34] and Nelson replied to that response.[35]  In a published decision,[36] the Ohio Supreme Court affirmed the judgment of the appeals court in denying Nelson's petition for mandamus, concluding that the manner by which an accused is charge is procedural, not jurisdictional, and that, since Nelson essentially sought release from prison, his claim should have been brought on direct appeal or in a suit for habeas corpus.[37]  Moreover, it noted that Nelson was incorrect in believing that his

---

[34] *Id.* at 0308

[35] *Id.* at 0318.

[36] *State ex rel. Nelson v. Griffin*, 103 Ohio St.3d 167, 814 N.E.2d 866 (2004).

[37] *Id.* at 168, 814 N.E.2d at 867.

-10-

indictment had even been dismissed, since the record indicates that "he was tried, convicted and sentenced upon an indictment that was never dismissed."[38]

### E.    Federal habeas petition

Nelson, pro se, timely filed the present petition for federal habeas relief, asserting the following seven grounds for relief:

1.    Petitioner was denied due process of law where the trial court denied the motion to suppress identification testimony based upon an erroneous burden of proof.

2.    Petitioner's right to due process and a fair trial was violated where his criminal history was put before the jury in the absence of his own testimony.

3.    Petitioner's right to confront and cross examine adverse witnesses was violated by police testimony regarding out of court identification procedures conducted before a non-testifying witness.

4.    Improper comments by the trial court to the jury violated the Petitioner's right to a fair trial by an impartial jury.

5.    Petitioner's Fifth Amendment rights were violated where the indictment in this case was dismissed prior to trial, and the trial court lacked jurisdiction to hear the case.

6.    Petitioner's Fifth Amendment rights were violated where the initial indictment was insufficient as a matter of law with regard to Count Four as to the degree of the felony.

7.    Petitioner's right to trial by jury and to due process of law were violated by the imposition of a sentence greater than the maximum allowable by law due to the fact findings made by the trial court rather than by the

---

[38] *Id.*

-11-

jury, where such fact findings went beyond those facts inherent in the verdict.[39]

The state filed a return,[40] initially maintaining that Nelson has waived or procedurally defaulted his right to attack the comments of the trial court because he did not contemporaneously object to those remarks at trial.[41] Further, it argues that Nelson is factually inaccurate in asserting that his indictment was ever dismissed prior to trial[42] and fails to state a cognizable claim for federal habeas relief when he contends that his indictment was insufficient as a matter of Ohio law.[43]  Finally, it argues that state courts did not unreasonably apply or act contrary to clearly established federal law in denying Nelson's remaining claims for habeas relief.[44]

Nelson filed a traverse[45] in which he claims that procedural default is inapplicable here because the state court never asserted or relied on it.[46] Moreover, he contends that his indictment was, in fact, dismissed, thereby rendering a contrary finding by the state courts

---

[39] ECF # 1 at 6-6A.

[40] ECF # 9.

[41] *Id.* at 14-15.

[42] *Id.* at 22-23.

[43] *Id.* at 23-24.

[44] *Id.* at 15-22, 25-28.

[45] ECF # 13.

[46] *Id.* at 2.

clearly erroneous.[47]  In addition, he maintains that his claim concerning the insufficiency of the indictment does state a federal law basis for granting the writ since it rests on the due process rights of adequate notice and the ability to prepare a defense.[48]  Finally, he argues that the state court decisions as to the remaining claims are unreasonable applications of or contrary to clearly established federal law.[49]

## III.  Analysis

The various grounds for relief asserted by Nelson will be here examined non-sequentially so that grounds resting on a similar analytical base may be considered together. This analysis begins with consideration of the state's three threshhold arguments not directed to the merits of Nelson's claims – that ground four has been procedurally defaulted and that grounds five and six do not state a cognizable claims for habeas relief.

**A.  Fourth ground for relief – impermissible judicial comments during voire dire and erroneous jury instructions – is not waived or procedurally defaulted.**

*1.  Standard of review – waiver/ procedural default*

The Sixth Circuit has recently re-stated the well-known standard by which noncompliance with a state procedural rule may serve to bar review of a claim by a federal

---

[47] *Id.* at 7-8.

[48] *Id.* at 8-9.

[49] *Id.* at 3-7, 9-11.

habeas court.  In *Smith v. State of Ohio Department of Rehabilitation and Corrections*,[50] the

Court pronounced:

> For noncompliance with a state procedure to serve as a bar to habeas
> review, the state procedure must satisfy the standards set forth in *Maupin v.
> Smith*.  First, there must be a state procedure in place that the petitioner failed
> to follow.  Second, the state court must have actually denied consideration of
> the petitioner's claim on the ground of the state procedural default.  Third, the
> state procedural rule must be an "adequate and independent state ground" to
> preclude habeas review.  This inquiry "generally will involve an examination
> of the legitimate state interests behind the procedural rule in light of the federal
> interest in considering federal claims."  A state procedural rule must be
> "'firmly established and regularly followed'" to constitute an adequate basis
> for foreclosing habeas review.  A state procedural rule is an independent
> ground when it does not rely on federal law.  If these three factors are satisfied,
> the petitioner can overcome the procedural default by either "demonstrat[ing]
> cause for the default and actual prejudice as a result of the alleged violation of
> federal law, or demonstrat[ing] that the failure to consider the claims will
> result in a fundamental miscarriage of justice."[51]

**2.      *Application – there was no procedural default by Nelson*.**

Initially, the Magistrate Judge observes that Nelson is here asserting two distinct

claims within ground four of this petition.[52]  On direct appeal, the state court separately

considered the claims that (1) the trial judge impermissibly used a hypothetical example

during voir dire as Nelson's fourth assignment of error on appeal[53] and (2) the assertion that

---

[50] *Smith v. State of Ohio Dept. of Rehab. and Corrs.*, 463 F.3d 426 (6th Cir. 2006).

[51] *Id*. at 430-31 (internal citations omitted).

[52] *See*, ECF # 12 (Nelson's merit brief) at 5-6, explaining that ground four – improper comments by the trial judge – includes both remarks during voir dire and allegedly improper jury instructions.

[53] 2003 WL 21419298 (*Nelson* I), at *4, quoting Nelson's fourth assignment of error.

the jury instruction as to the elements of aggravated robbery was deficient as Nelson's eighth assignment of error.[54]  The joining of what were two independent claims in the state appeal into a single claim in this petition has led to confusion in logic and presentation by both Nelson and the state that must first be untangled before the underlying issues can be analyzed.

The state's contribution to the confusion is its decision to focus exclusively on the second element of ground four – the allegedly impermissible instruction – to argue that the entire claim is procedurally defaulted.[55]  It contends that this Court may find the default in reliance by the state appeals court on Nelson's failure to contemporaneously object to the instructions at trial.  Specifically, the state contends that evidence of the default is in the following language of the appellate opinion:  "Because defendant failed to object to the jury instructions, we review the failure to give the identified instruction for plain error."[56]

In examining this statement by the appeals court, the Magistrate Judge observes that while the state appeals court noted the failure to object to the jury instruction at trial and then predicated its consideration of Nelson's challenge to the instruction on the standard of review applicable in such cases, it also plainly did not *den[y] consideration of the petitioner's*

---

[54] *Id.* at *5, quoting Nelson's eighth assignment of error.

[55] ECF # 9 at 14-15.

[56] *Id*. at 14, quoting *Nelson*, 2003 WL 21419298 (*Nelson* I), at *5.

*claim* on the ground of the state procedural default."[57]  In fact, no state procedural bar was definitively asserted.  Rather, the claim was immediately considered on its merits as a matter of state law, then rejected.[58]

Accordingly, the Magistrate Judge recommends finding that this aspect of Nelson's fourth ground for habeas relief is not barred by procedural default.  Whether the state court decision on the merits concerning this aspect of the fourth ground for relief was contrary to clearly established federal law will be addressed below.

**B.  Sixth ground for relief – defective indictment** – does state a cognizable claim.

*1.  Standard of review – non-cognizable claims*

The state asserts that Nelson's sixth ground for habeas relief – that the indictment was insufficient to inform him of the charge of having a weapon while under disability – is purely a question of state law, since it rests on Ohio's statutory distinction between fifth degree and third degree felonies.[59]  As such, the state maintains that this claim "does not involve a question of constitutional dimension necessary to raise an actionable federal habeas corpus claim."[60]

---

[57] *Smith,* 463 F.3d at 431 (emphasis added).  This is not a case where a merit review was conducted by the state court *after* a clear invocation of a procedural bar, thus providing an alternative basis for denying the claim.  That circumstance would still permit procedural default to be asserted by the state to the federal habeas court.  *See*, *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

[58] *See*, 2003 WL 21419298 (*Nelson* I), at *5.

[59] ECF # 9 at 23-24.

[60] *Id.* at 24.

The United States Supreme Court has continued to hold that the requirements of the Fifth Amendment concerning indictments have not been applied to the states.[61]  However, the Supreme Court teaches that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state and federal."[62]

The Sixth Circuit in *Valentine v. Konteh*,[63] citing the Supreme Court's formula of *Russell v. United States*[64] as to the essential criteria for an indictment, stated the clearly established federal law concerning a constitutionally sufficient indictment as follows:

> [A]n indictment is only sufficient if it (1) contains the elements of the charged offense, (2) gives the defendant adequate notice of the charges, and (3) protects the defendant against double jeopardy.[65]

Moreover, *Valentine* specifically noted that these due process requirements, though originally articulated in a federal case, have been held to apply "also in state criminal charges."[66]

---

[61] *See*, *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).

[62] *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  *See also*, *Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A] conviction upon a charge not made ... constitutes denial of due process.").

[63] *Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005).

[64] *Russell v. United States*, 369 U.S. 749, 763-64 (1962).

[65] *Valentine*, 395 F.3d at 631.

[66] *Id.*

2.   *Application – Nelson stated a cognizable claim for federal habeas relief in his sixth ground for relief concerning the sufficiency of the indictment.*

Nelson asserts that the indictment charged him with having weapons while under disability as a fifth degree felony and so did not afford him notice that he would be tried as having committed a more serious third degree felony – the charge upon which he was actually convicted and sentenced.  As such, according to the *Russell* test articulated by the United States Supreme Court and recognized as applicable to state proceedings by the Sixth Circuit in *Valentine*, the Magistrate Judge recommends finding that in this ground Nelson does state a cognizable claim for habeas relief.

Concluding here that this claim in cognizable in a federal habeas proceeding does not extend to a recommendation that the claim is meritorious.  The merits of this claim, which were rejected by the state appeals court, will be addressed below pursuant to the standard pronounced by *Williams v. Taylor*[67] for analyzing state court adjudications of federal claims.

C.   **Fifth ground for relief – dismissed indictment**

1.   *Factual and analytical predicate for the fifth ground for relief*

Nelson argues in his fifth ground for habeas relief that the indictment in this case was dismissed in the Cleveland Municipal Court prior to commencement of  trial in Cuyahoga County Common Pleas Court, and thus that all the proceedings in Common Pleas Court

---

[67]   *Williams v. Taylor*, 529 U.S. 362, 412 (2000) (citing 28 U.S.C. § 2254(d)(1)).

-18-

based on the indictment were invalid.[68]  The state maintains that Nelson is factually incorrect in asserting that the indictment was ever dismissed.[69]  As such, the state contends that Nelson's claim here is "without merit."[70]  Stated differently, the state is not presenting a "merits" argument raising a different view of the consequences of a dismissed indictment, but rather maintaining that something that never occurred cannot be the basis for a claim for relief; *i.e.* that this is a non-cognizable claim.

2.    ***Nelson's indictment was never dismissed and so a claim erroneously predicated on a factually incorrect claim of dismissal does not a state a cognizable basis for granting the writ.***

Nelson's claim here rests on his fundamental misapprehension about a handwritten notation on a page of the records of the Cleveland Municipal Court.  That entry, which is the final one for Nelson's case in that court, reads, "Nolle ind. # 416032 10-29-01."[71]  Nelson believes that this notation is evidence that his indictment was dismissed in Cleveland Municipal Court on the very same day it was filed in Cuyahoga County Common Pleas Court.[72]

---

[68] *See*, ECF # 1 (petition) at 6-A, ECF # 12 (Nelson's merit brief) at 6-7, ECF # 13 (traverse) at 7-8.

[69] ECF # 9 at 22-23.

[70] *Id.* at 23.

[71] ECF # 13, Ex. 1 at 2.

[72] *Id.* at 7. *See also*, ECF # 11 (state record) at 0001, copy of the indictment showing its number and that it was filed at Common Pleas Court on Oct. 29, 2001.

-19-

Nelson assumes that the reference in Cleveland Municipal Court to "nolle," followed by the indictment number, means that the indictment was dismissed.[73] In fact, that interpretation is factually wrong in at least two respects.

First, prior to the issuance of that indictment, Nelson's case would have been proceeding in municipal court pursuant to a "complaint"[74] filed by the city police prosecutor, by virtue of an "indictment"[75] by the county grand jury[76].  Thus when an indictment against Nelson was obtained, the complaint would need to have been nolled, since further proceedings would be in a state common pleas court under the indictment, not in municipal court under the complaint.

Second, the Ohio Criminal Rules require that a court entering a nolle prosequi either (1) show that it was requested or consented to by the prosecution[77] or (2) provide findings of fact and reasons for the dismissing the action over the objection of the state. [78]

---

[73] ECF # 11 at 0241 (Nelson's complaint for mandamus), where he states that the indictment "was dismissed via nolle prosequi" by a municipal court magistrate on the same day it was issued.

[74] Ohio Crim R. 3.

[75] Ohio Crim R. 7.

[76] *See, State v. Kenney*, 74 Ohio Ops. 2d 352, 343 N.E. 2d 350 (Cuy. Cty. Common Pleas 1975).  Minor misdemeanors, such as traffic tickets, proceed by yet another distinct form – a "citation."  *See*, Ohio Crim R. 4.1.

[77] Ohio Crim R. 48(A).

[78] Ohio Crim R. 48(B).

An examination of the complete municipal court record provided here shows a handwritten note, "Pros. Reqt. 10-30-01" – presumably indicating the prosecutor made a request on October 30, 2001 – immediately above the note, quoted above, "Nolle Ind. # 416032 10-29-01."  Read together, the notes in the municipal court record indicate that on October 30, the city prosecutor requested that further proceedings in municipal court pursuant to a complaint be nolled because of an indictment issued the day before by the county grand jury.

There is no requirement that state courts take the time to explain to pro se litigants the details of state criminal procedure.  However, the absence of even a basic explanation somewhere in the many opinions[79] of what actually occurred has resulted in Nelson repeatedly misunderstanding and misreading the portion of the municipal court record.  The lack of explanation also seems to have convinced him that because his factually erroneous

---

[79] A partial, still imprecise explanation of the basic issue here occurs only once in the state's brief on appeal to the Ohio Supreme Court.  There, the state argued that the issue is that "[Nelson] is confused with regard to the dismissal of the original indictment by the Cleveland Municipal Court once he was indicted by the Cuyahoga County Grand Jury. Given his mistaken belief that his indictment was nolled, the legal argument based on this incorrect assertion is obviously without merit."  ECF # 11 at 311-12.   As noted, there was, properly speaking, no "indictment" in support of the proceedings in municipal court; it was a "complaint" that was nolled there when the "indictment" was issued by the county grand jury.

view was never directly shown to be wrong,[80] his mistaken interpretation must be true and so warranted emphatic repetition in his federal habeas petition.

In any event, the Ohio Supreme Court's factual finding that Nelson was tried and convicted "upon an *indictment* that was never dismissed,"[81] is plainly correct.  Consequently, Nelson's current fifth ground for habeas relief is predicated on the factually false assumption that he was prosecuted according to a dismissed indictment.  Since that did not occur, it provides no basis for seeking relief.  The Magistrate Judge, therefore, recommends dismissing the fifth ground with prejudice.

## D.     Remaining grounds for relief

### 1.     *Standard of review – "unreasonable application of" or "contrary to" clearly established federal law*

When a federal habeas petitioner has fairly presented his federal claim to the state courts and the claim has there been adjudicated, the federal habeas court may not grant the writ unless the state decision was either "contrary to ... clearly established federal law, as

---

[80] Throughout, the state chose to largely oppose Nelson on procedural grounds, arguing that he should have raised any arguments about his indictment on direct appeal or, since he was essentially seeking release from prison, in a habeas petition.  *See*, *Nelson*, 103 Ohio St.3d at 168-69. This emphasis on procedure undoubtedly left Nelson with the firm, but mistaken impression that his fundamental factual point was correct – his indictment had been dismissed before trial – and that the state was attempting to avoid the consequences of this defect by arguing that he had not presented his case in the right way in the right forum.

[81] *Nelson*, 103 Ohio St.3d at 169 (emphasis added).  The Supreme Court's further observation – that the indictment's non-dismissal is evident from Nelson's own filing in the appeals court – refers to a correct understanding, as explained above, of the notes on the municipal court docket sheet which was submitted by Nelson to the appeals court.

determined by the Supreme Court of the United States," or "involved an unreasonable application" of such law.[82]

Under the "contrary to" clause, the writ may issue only if the state court arrived at a conclusion that was opposite to that reached by the United States Supreme Court on a question of law or decided a case differently than did the United States Supreme Court on a set of materially indistinguishable facts.[83]

Where the state court has correctly identified clearly established federal law as the basis for its decision, the federal habeas court may grant the writ only if it determines that the state tribunal unreasonably applied that law to the facts of the case.[84] The proper inquiry in this regard is whether the state court's decision was "objectively unreasonable" and not merely erroneous or incorrect.[85]

### 2.  *Application of the standard*

a.  *Ground one – pre-trial identification from a photo array*

(1)  Clearly established federal law on photo identification processes

---

[82] *Williams*, 529 U.S. at 412 (citing 28 U.S.C. § 2254(d)(1)).

[83] *Id*. at 405-06.

[84] *Id.* at 407-08.

[85] *Id.* at 409-11.

The state appeals court correctly noted that a criminal defendant has the initial burden of showing that the photo identification process was impermissibly suggestive.[86]  If so, the court must determine if the process was nevertheless reliable.[87]

Correctly locating clearly established federal law in *Neil v. Biggers*[88] as to how to determine, from the totality of the circumstances, whether the identification process was reliable, the state appellate court quoted the *Biggers* factors as follows:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation ....[89]

As the Sixth Circuit has stated, the reviewing court must look to "the *effects* of the circumstances of the pretrial identification, not whether the law enforcement officers *intended* to prejudice the defendant."[90]  The process of ascertaining the reliability of the identification involves weighing the *Biggers* factors against "'any corrupting effect of the suggestive identification.'"[91]

---

[86] 2003 WL 21419298 (*Nelson* I), at *2.  *Accord*, *Smith v. Mitchell*, 348 F.3d 177, 211 (6th Cir. 2003).

[87] *Id.*  *Accord*, *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

[88] *Neil v. Biggers*, 409 U.S. 188 (1972).

[89] 2003 WL 21419298 (*Nelson* I), at *2, quoting *Biggers*, 409 U.S. at 199-200.

[90] *Howard*, 405 F.3d at 470 (emphasis added).

[91] *Id.*, quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Moreover, it is clear that "[a]n earlier failure to identify, or even a positive identification of another suspect, does not require exclusion of an in-court or pretrial identification, if otherwise reliable."[92]

(2)    The state appeals court reasonably applies clearly established federal law in concluding that the photo identification process was reliable.

Here, Nelson claims that the victim had initially been unable to identify him from the first photo array, but had only made an identification after being shown a new photo array where Nelson's photograph was the only one with a white background.[93]  Using the *Biggers* factors,  the state court found that:

> [T]he victim repeatedly confirmed his certainty that he made the correct identification.  The victim further denied that the background had any impact on his identification.  Indeed, when defense counsel cross-examined the victim as to any differences he noticed in the defendant's picture, he began detailing differences in the defendant's features.  We also note that the victim refused to identify another suspect as his assailant on the day in question despite the fact that he recognized the vehicle at the scene of the show-up identification to be the same vehicle that he observed during the commission of the offense.[94]

Nelson asserts none of the *Biggers* indicia of unreliability such as a failure of the identifying victim to view the suspect during the commission of the crime or a lengthy period of time between the crime and the identification.  His sole argument is that the white background to his photo must have been improperly suggestive rendering the identification unreliable.

---

[92] *Id*. at 484 (collecting cases).

[93] ECF # 12 at 2-3.

[94] 2003 WL 21419298 (*Nelson* I), at *2.

-25-

Although the state court concluded that the mere presence of a different background did not, under state law, satisfy the first prong of the analysis for unreliable identification, establishing that the process was unduly suggestive, and Nelson has asserted no authority by which a federal habeas court could conclude differently, the state court made factual findings under the *Biggers* test that support the conclusion that the identification was reliable.

The findings by the state appeals court that the victim was consistently certain of his identification, was careful to be accurate with his identification, and further showed that the background was of no effect when he detailed Nelson's facial features, not the background to the photo, in response to a defense question, all show that the state court reasonably applied *Biggers* in this case to find that the identification was, on balance, reliable.

Moreover, Nelson's contention that the identification was fatally flawed simply because the victim could not identify him with the first photo he was shown[95] is incorrect as a matter of federal law.  As the Sixth Circuit explicitly found in *Howard,* an earlier failure to identify is not fatal if the entire identification process is otherwise reliable according to *Biggers*.

Therefore, the Magistrate Judge recommends finding that the state court here reasonably applied clearly established federal law in denying this claim and so Nelson's first ground for federal habeas relief should now be denied.

---

[95] ECF # 12 at 3.

*b.*   *Grounds two and three  – improper trial testimony about Nelson's prior criminal history and the photo array that was successfully objected to and the subject of curative instructions.*

(1)   Clearly established federal law

As the Sixth Circuit recently held in *Biros v. Bagley*:[96]

> Generally, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."[97]

As stated by the Sixth Circuit, a fair trial is deemed denied when such errors "were so egregious as to nullify the legitimacy of the properly admitted substantive evidence of the defendant's guilt."[98]

Here, Nelson posits that he was denied a fair trial through improper testimony against him in two ways: (1) when a police detective testified about Nelson's prior criminal history[99] and (2) when another  police officer testifying about the photo identification procedure implied that a second identification of Nelson was made by a party not testifying in court.[100] In both cases, as noted by the state appeals court decision, Nelson's defense counsel

---

[96] *Biros v. Bagley*, 422 F.3d 379 (6th Cir. 2005).

[97] *Id*. at 391, quoting *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002).

[98] *Lundy v. Campbell*, 888 F.2d 467, 473 (6th Cir. 1989).

[99] ECF # 1 at 5 (ground two).

[100] *Id*. at 6 (ground three).

promptly objected, the objection was sustained, and the jury told to disregard the testimony.[101]

Nelson alternatively claims in his petition that (1) the state court incorrectly analyzed this as a matter of abuse of discretion and (2) failed to see the second example as involving the confrontation clause.[102]

(2)    The state court decision that the trial court acted without abusing its discretion in sustaining the objection and then issuing curative instructions is not contrary to clearly established federal law.

Under the clearly established federal law referenced in *Biros*, Nelson has failed to show that trial testimony that was successfully objected to by his counsel and then ordered disregarded by the trial judge reached the level of denying him a fundamentally fair trial. The Magistrate Judge, therefore, recommends that grounds two and three of Nelson's petition for habeas relief be denied.

c.    *Fourth ground for relief – impermissible comments by the trial judge*

(1)    Clearly established federal law – judicial bias/ improper jury instructions

The Supreme Court has stated that there is a constitutional right to receive a "fair trial in a fair tribunal before a judge with no actual bias against the defendant."[103]  The Sixth Circuit in *Lyell v. Renico*[104]  has further held that judicial bias claims against state court

---

[101] 2003 WL 21419298 (*Nelson* I), at *3.

[102] ECF # 12 at 3-4.

[103] *Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997).

[104] *Lyell v. Renico*, 470 F.3d 1177 (6th Cir. 2006).

-28-

judges in habeas matters are to be reviewed under the rubric of *Liteky v. United States*.[105] That standard holds that judicial comments are to be considered biased or prejudiced only when they display a "deep-seated favoritism or antagonism that would make fair judgment impossible."[106]

As to that portion of ground four which asserts that the trial judge gave an improper instruction to the jury, the Supreme Court, in *Estelle v. McGuire*, held that improper jury instructions may be the basis for granting the writ only when such instructions are shown to be more than undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm as to render the entire trial fundamentally unfair.[107]  The Court further noted in *Estelle* that it has "defined the category of infractions that violate 'fundamental fairness' very narrowly."[108]

(2)  Factual and analytical predicates

As noted earlier, Nelson's present ground four is actually a combination of two claims that were asserted separately in his direct appeal.  In addition, and as also previously noted, the state elected here to focus solely on one as element of the current ground four – *i.e.*, one of the two conjoined claims – and to assert that ground four was procedurally defaulted. The Magistrate Judge has earlier suggested finding that there is no procedural default.

---

[105] *Liteky v. United States*, 510 U.S. 540 (1994).

[106] *Lyell*, 470 F.3d at 1186 (quoting *Liteky*, 510 U.S. at 555).

[107] *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

[108] *Id.* at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Consequently, a re-statement of the two elements of the present ground four is in order before proceeding to an analysis of the merits.

Nelson asserts first that during voir dire the trial judge recited a hypothetical to the jury by way of explaining that the jury should not take the attorney's comments as evidence, and, in Nelson's view, essentially "recited the court's prediction of the prosecutor's outline of the case, using prosecutorial language, pointing at [Nelson] and accusing [him] within the context of this 'theoretical' description of the case." This, as noted, was Nelson's fourth assignment of error on direct appeal.[109]

Next, as part of this same habeas claim, Nelson claims that the trial judge also impermissibly instructed the jury by omitting a charge that identified the victim and failed to require that Nelson be found to have a weapon under his control.[110] This aspect of the fourth ground for habeas relief was Nelson's sixth assignment of error on appeal[111] and was earlier not found to have been procedurally defaulted. Therefore, these distinct portions of the fourth ground for relief will be addressed here under the appropriate and controlling federal law.

(3)(a) The state appeals court did not act contrary to clearly established federal law in deciding that the comments by the state trial judge during voir dire did not violate due process.

The state court found that:

---

[109] *See*, ECF # 11 at 109.

[110] *See*, ECF # 12 at 6.

[111] *See*, ECF # 11 at 109.

> [D]efendant complains about a portion of jury voir dire where the court
> hypothesized about the State's possible opening statement to illustrate to the
> jurors that the attorney's statements are not evidence.  Defendant contends that
> the court wanted the jury to believe the facts of the hypothetical.  We disagree.
> After giving the hypothetical, the court emphasized the need for the jury to
> decide the case based on the evidence and the instructions given by the court
> and not on what the lawyers "think the evidence is going to be."[112]

The state court then found that this did not constitute abuse of discretion.[113]

Analyzing this episode under the controlling principles of *Liteky*, there is a complete lack of evidence as to how the trial judge's use of a hypothetical illustrating what the prosecutor might do in opening argument – to explain that jurors should not take such arguments as evidence – somehow shows a "deep-seated favoritism" for the prosecution by the judge that renders "fair judgment impossible."[114]

Accordingly, the Magistrate Judge recommends finding that the state court decision here was not contrary to clearly established federal law.

(3)(b)  The state court did not act contrary to clearly established federal law when it held that the trial judge did not act improperly in instructing the jury.

The state appeals court considered the claim of improper instruction under a state law "plain error" standard.[115]  It concluded that the judge had explicitly required the jury to convict on the weapons count only if it found that Nelson "'had on his person a deadly

---

[112] 2003 WL 21419298 (*Nelson* I), at *4 (citation omitted).

[113] *Id.*

[114] *Liteky*, 510 U.S. at 555.

[115] 2003 WL 21419298 (*Nelson* I), at **5-6.

-31-

weapon while committing a theft offense and in the course of that conduct he displayed it.'"[116] It further found that mentioning the specific identity of the victim during the charge would have made no difference because the victim actually testified at trial and there was "no evidence in the record challenging the identity of the victim."[117]

Applying the *Estelle* standard on habeas review, the Magistrate Judge recommends finding that there is nothing in the supposedly erroneous instruction that, taken in context of the whole trial, renders that proceeding "fundamentally unfair." Attempting to find a distinction between charging a jury to find guilt only when there is proof that a weapon was "under the control" of a defendant, rather than when the evidence shows he had a weapon on his person and displayed it, is ineffectual sophistry. Moreover, the claim that a charge is fundamentally unfair for not requiring the jury to find that the alleged victim was the actual victim – when not even the defense argued that the victim who testified at trial to his ordeal was not the person specified in the complaint – cannot rise to the level of a constitutional violation since, as the state court noted, the outcome of the trial would not have been different had Nelson's version of the charge been given.

Therefore, the Magistrate Judge recommends finding that both elements of Nelson's fourth ground are without merit and thus that the fourth ground for habeas relief be denied.

d.      *Ground six – insufficiency of indictment*

---

[116] *Id.*, at *6 (quoting trial transcript of the jury charge).

[117] *Id.*, at *6.

(1)     Clearly established federal law – sufficiency of indictments/ notice of charges

As the Sixth Circuit stated in *Lucas v. O'Dea*:[118]

"[T]he federal guarantee of charge by indictment does not apply to the states at all."  However, a state prisoner petitioning for habeas corpus relief has a due process right to be informed of the charges against him.[119]

That requirement of being informed is satisfied if the offense is "charged with precision and certainty so as to apprise the accused of the crime of which he stands charged."[120] Essentially, the charge must be sufficient to "enable a presumptively innocent man to prepare for trial."[121]

(2)     The state court did not act contrary to clearly established federal law when it held that Nelson's indictment gave him notice of the offense with which he was charged.

Nelson claims that the indictment is constitutionally insufficient because it did not charge him with a third degree felony but, rather, with a fifth degree felony.[122]  Specifically, Nelson asserts that because the indictment did not explicitly require the state to prove that he had been released from prison or post-release control within five years of this offense, the charge of having a firearm while under disability is a fifth degree felony, not a third degree

---

[118] *Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999).

[119] *Id.* at 417 (citations omitted).

[120] *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).

[121] *Id.*

[122] ECF # 12 at 7-8.

felony.[123]  The state appellate court found Nelson's argument unpersuasive.  It found (1) that the indictment did specify that Nelson was charged with committing this crime while under the disability of a prior conviction for aggravated burglary, and (2) Nelson had stipulated to this prior conviction.[124]  As such, he had actual notice – as proven by his stipulation – of the offense for which he was being tried.

The Magistrate Judge therefore recommends finding that the state court's decision – insofar  as it concerns the federal right to have sufficient notice of a charged offense as to permit preparation of a defense – is not contrary to clearly established federal law.  Nelson was informed he was charged with having a weapon while he was under the disability of a prior conviction.  The fact of that prior conviction was not only contained in the indictment by reference to the case number of the earlier matter[125] but Nelson stipulated to its existence.[126]  Accordingly, the Magistrate Judge further recommends that ground six of this petition be denied.

*e.*     *Ground seven – excessive sentence/ Blakely violation.*

(1)     Clearly established federal law – maximum/ excessive sentence

---

[123] *Id.*

[124] 2003 WL 21419298 (*Nelson* I), at *5.

[125] *Id.*

[126] *Id.*

Nelson contends that his sentence violates the rule in *Blakely v. Washington*[127] because, he asserts, Ohio law mandates a sentence of three years for a first degree felony for an offender who has not previously been in prison, and he is serving nine years.[128]  He claims that the trial court improperly used facts not found by the jury – his prior conviction – to "enhance" his sentence.[129]  Nelson asks this Court to grant him the Great Writ because, although the record at trial did show that he had been "sentenced" to a previous term in prison, he contends that the record never reflected that he had actually "served a prison term."[130]

*Blakely* holds that the maximum sentence that may be imposed is one based on facts "reflected in the jury verdict or admitted by the defendant."[131]  This rule does not require that prior convictions be proven by the jury.[132]

(2)    The decision by the state appeals court as to the sentence is not contrary to clearly established federal law.

---

[127] *Blakely v. Washington*, 542 U.S. 296 (2004).

[128] ECF # 12 at 9.

[129] ECF #13 at 10-11.

[130] *Id.*

[131] *Blakely*, 542 U.S. at 303.

[132] *Id.* at 301.

-35-

The Magistrate Judge notes initially that Nelson never presented any portion of his *Blakely* argument to the state appeals court.[133]  His sole argument to the Ohio courts was that the crime he committed did not actually cause physical harm to another and so should not merit punishment at the upper end of the statutory limit.[134]  The state appeals court carefully reviewed the trial transcript in light of the principle that felony sentencing guidelines call for a judge to protect the public and punish the offender.[135]  Since Nelson's conviction was within the statutory limits, and no evidence was presented that it was inconsistent with that imposed on similar offenders convicted of similar crimes, it was upheld.[136]

Even if Nelson's current *Blakely* argument is considered to be exempt from the requirement that it have been first fairly presented to Ohio courts,[137] it is not persuasive. Contrary to Nelson's assertion here that the state record shows only that was convicted of a crime, but not that he actually served a sentence in prison, the fact of his actual incarceration was directly confirmed by him in open court as the trial judge conducted the sentencing proceeding:

---

[133] Nelson filed his appeal in 2002; *Blakely* was decided in 2004.

[134] *See*, ECF # 11 at 0039-40 (brief on appeal).

[135] 2003 WL 21419298 (*Nelson* I), at*7.

[136] *Id.*

[137] The state has not raised fair presentment although the essence of Nelson's argument here is based on principles articulated in *Apprendi v. New Jersey*, 530 U.S. 490 (2000), which existed prior to his state appeal.

-36-

The Court:  Okay.  So when did you get out?  When did you get out of the penitentiary?

The Defendant:  1996.

The Court:  That would have made almost four years then.

The Defendant:  Okay, three and a half, four years.[138]

Given Nelson's own declaration in open court that he served "three and a half, four years" in prison on the conviction he stipulated to, it is, to say the least, disingenuous, to now represent to a federal habeas court that the sentence here is constitutionally invalid because there was no proof that he had actually served time in prison.  Inasmuch as *Blakely* explicitly permits a sentencing court to take notice of what is "admitted by the defendant,"[139] and that Nelson openly admitted to the state sentencing judge in this case that he served "three and a half, four years" in state prison, the Magistrate Judge recommends finding that ground seven of Nelson's petition is entirely based on an incorrect premise and so should now be denied.

## IV.  Conclusion

In summary, the Magistrate Judge recommends the following as to the seven grounds for relief asserted by Nelson:

- **Ground One** –*pre-trial photo array identification*.  The decision by the state appeals court denying relief on this claim was not an unreasonable application of clearly established federal law.

---

[138] ECF # 11 at 1019-20.

[139] *Blakely*, 542 U.S. at 303.

- **Grounds Two and Three** – *admission of testimony on prior criminal history and of a purported identification by another during the photo array.* The decision of the state appeals court denying relief on these related grounds was not unreasonable application of clearly established federal law.

- **Ground four** – *impermissible judicial comments in voire dire and improper jury instructions.* First, this claim is a combination of two distinct state appellate grounds. Next, the state's argument, based solely on an analysis of one element of this claim, that this claim is waived or procedurally defaulted, is not persuasive. Finally, as to both elements, the decisions of the state court were not contrary to clearly established federal law.

- **Ground five** – *dismissed indictment.* Nelson's claim that he was prosecuted pursuant to a dismissed indictment does not state a cognizable claim for habeas relief because, in fact, the indictment under which he was tried was never dismissed.

- **Ground six** – *insufficient indictment.* First, contrary to the state assertion, this claim does not purely state a question of state law and so is cognizable in a federal habeas proceeding. Finally, the decision of the state appeals court on this claim was not contrary to clearly established federal law.

- **Ground seven** – *excessive sentence/ Blakely violation.* Although the Nelson never raised a federal constitutional challenge to his sentence at the state level and so would have been susceptible to a "fair presentment" argument in the context of exhaustion, that argument was not made here. However, notwithstanding that, Nelson's argument rests on an incorrect statement of the facts and thus the decision by the state court rejecting a state law challenge to the sentence is not contrary to clearly established federal law.

Dated: March 12, 2007                                    s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge

### Objections

-38-

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[140]

---

[140] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).